# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-3206

_____

United States of America

*Plaintiff - Appellee*

v.

Esther C. Durham

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: April 12, 2016
Filed: September 6, 2016

_____

Before GRUENDER and KELLY, Circuit Judges, and ERICKSEN,[1] District
Judge.

_____

ERICKSEN, District Judge.

Appellant Esther Durham, who pleaded guilty to a drug distribution conspiracy
charge, appeals her sentence. Before sentencing, Durham's attorney filed objections

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District
of Minnesota, sitting by designation.

to the Presentence Investigation Report ("PSI") and, in the same document, moved for a downward departure or variance. On appeal, Durham focuses on just one of her objections: her objection to the Probation Office's finding that she was not entitled to a downward adjustment as a minor or minimal participant in calculating her offense level. The Probation Office distributed a revised PSI with an addendum responding to Durham's filing, and the district court[2] announced that it would consider Durham's objections and motion at the sentencing hearing. At sentencing, after hearing argument from Durham's attorney, the district court found the applicable United States Sentencing Guidelines ("Guidelines") range for imprisonment to be 87 to 108 months and then, after further proceedings, imposed a sentence of 72 months' imprisonment.

Durham appeals the sentence primarily on the ground that the district court did not explicitly rule on her objection relating to a mitigating role adjustment. That characterization of the sentencing proceedings, however, is incorrect. We recognize that it is a serious error to improperly calculate the applicable Guidelines range. *Molina-Martinez v. United States*, 136 S.Ct. 1338, 1345 (2016). But the district court did rule on Durham's role-adjustment objection, and we find no clear error in its calculation of Durham's Guidelines range based on the denial of a mitigating role adjustment. We affirm.

## I.

On appeal, Durham raises two issues: First, whether the district court erred by failing to resolve the factual dispute about the applicability of a downward adjustment to her offense level for a mitigating (minor or minimal) role under Guidelines §

---

[2]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

3B1.2, and second, whether the district court erred in calculating Durham's offense level. "We review de novo the district court's application of the Guidelines, and we review for clear error the district court's factual findings." *United States v. Betts*, 509 F.3d 441, 445 (8th Cir. 2007) (citing *United States v. Ingram*, 501 F.3d 963, 968 (8th Cir. 2007)).

## II.

Durham and her codefendant in this action, Ryan Franks, were charged in Count I of a superseding indictment with conspiring to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. On May 21, 2015, Durham pleaded guilty, without a plea agreement, to this single count. Franks pleaded guilty on June 1 pursuant to a plea agreement filed that same day, in which the parties agreed that Franks should be held responsible "for at least 500 grams, but less than 1.5kg of methamphetamine (mixture)."

The Probation Office was required to distribute its initial PSI regarding Durham to counsel by July 2. The PSI found, among other things, that in an interview, Durham admitted that for four to five months, drugs were sold out of the apartment she shared with Franks; that she picked up pound quantities of methamphetamine from a supplier; that she had occasionally delivered narcotics to customers even though they usually met with Franks; and that she assisted Franks in maintaining a ledger of drug sales. PSI ¶ 31. It concluded that a "'minimal participant' or 'minor participant' reduction is not applicable in this case" because Durham "was involved with different aspects of the criminal enterprise," "was aware of the transactions completed by . . . Franks," and "admitted to picking up quantities of methamphetamine from their supply source and conducting drug sale transactions with customers, as well as assisting in tracking their customers' drug debts." PSI ¶

34. The initial PSI also found that Durham was accountable for a total of 19 pounds of methamphetamine mixture, resulting in a base offense level of 34. PSI ¶ 32. It recommended a two-level increase for firearm possession, PSI ¶ 33, and a three-level decrease for acceptance of responsibility, PSI ¶ 38, but no downward adjustment for role, PSI ¶ 43. These determinations resulted in an offense level of 33. Combining the offense level with a criminal history category of III, the initial PSI calculated the applicable Guidelines range to be 168 to 210 months' imprisonment.

In a document titled "Objections to PSI [and] Motion for Downward Departure or Variance," DCD 90, Durham filed objections to the initial PSI, consistent with the district court's amended order on sentencing schedule, DCD 85, which required any such objections to be filed by July 23. *See also* NECrimR 32.1(b). Durham raised numerous objections to the PSI. Most pertinent to this appeal, she objected to PSI ¶ 31 as follows:

> Ms. Durham acknowledged that "she assisted Franks in keeping track of the drug debt in a 'black book.'" The probation officer has interpreted this in the most damning possible way. In fact, Ms. Durham did occasionally write information in Ryan Franks' black book but only occasionally and only under his direction. . . . *Rather than supporting the inference, see ¶ 34, that Ms. Durham is not a minimal or minor participant, her obedience and subordination to Ryan Franks strongly supports a role adjustment for Ms. Durham.*

DCD 90 ¶ 9 (emphasis added). Without specifically referencing PSI ¶ 34 again, Durham asked the district court to find "that she [was] in fact eligible for a downward role adjustment." DCD 90 ¶ 21. Durham also objected to the amount of drugs for which she was responsible and to the application of the two-level increase for firearm possession. Referring to Franks' plea agreement, Durham further asserted that her base offense level should be lower than Franks' and that "an appropriate offense level would be 25." She also argued that a downward variance or departure from the

-4-

recommended Guidelines range was warranted because of policy considerations relating to how her relatively minor role in the drug distribution prohibited her from being eligible for a substantial-assistance departure.[3]

Consistent with the scheduling order, the Probation Office distributed a revised PSI by August 6, with an addendum explaining its position regarding Durham's objections ("PSI Addendum"). Responding to the objection to PSI ¶ 34, the PSI Addendum stated:

> Regarding the issue of a role adjustment, the defendant admitted in her post-Miranda statement to being involved in various phases of drug distribution, including bookkeeping, picking up shipments from the supplier, as well as meeting with customers. The defendant's participation was not simply limited to a single task within the conspiracy. Additionally, she acknowledged that drugs were being sold out of the apartment she shared with her codefendant. While her codefendant appears to have conducted most of the sales, the defendant had knowledge and/or understanding of the scope and structure of the conspiracy, specifically the activities of her codefendant. Thus, the threshold requirement for a "minor" or "minimal participant" reduction is not satisfied.

The PSI Addendum also responded to other of Durham's objections, including to the quantity of drugs involved and the firearm possession.

At this point, the district court's scheduling order provided that Durham should file and serve "a written statement of position respecting each of the unresolved objections to the presentence report, including the specific nature of each objection,"

---

[3]We are sensitive to the confidentiality of the sealed objections but discuss them to the extent that arguments were repeated in the unsealed sentencing transcript and briefing on appeal.

and should attach any written evidence in support of the position to that document or request an opportunity to provide oral testimony. DCD 85. Durham did not file any written statement of position, did not file supporting documents, and did not make any request to provide testimony.

The district court held Durham's sentencing hearing on September 28, four days after sentencing Franks. At the hearing, the parties first addressed Durham's objections relating to the amount of drugs for which she should be held responsible. With a government concession, the court found that the attributable amount was 500 grams to 1.5 kilograms of methamphetamine mixture—the same as the amount agreed to in Franks' plea agreement. Durham then raised her objection with regard to her allegedly minor role, "request[ing] that the Court recognize Ms. Durham's lesser involvement than of the codefendant . . . either in the argument that she should get a two-level reduction for being a minor participant or that the Court consider at the level of a variance." Sent. Tr. 4. Durham noted that this request could affect the Guidelines calculation but reiterated that she had no preference in "how you deal with it, so long as I can address to the Court basically what happened and why the Court should at least consider that in some fashion in deciding what sentence is appropriate." *Id.* at 4-5. The district court responded that it would "be happy to consider that" and "should consider that in connection with the statutory sentencing factors that [it is] required to weigh," including "the need to avoid unwarranted sentencing disparities." *Id.* at 5. It explained that "where someone's conduct is less culpable than a codefendant, it makes sense that the less culpable person receives a lower sentence, unless obviously there's some criminal history factor that causes that person to receive a greater sentence." *Id.*

The court then noted that the PSI Addendum had addressed many of Durham's DCD 90 objections. *Id.* The court overruled certain objections relating to each party's presentation of the offense, noted that the PSI Addendum "addressed the other

-6-

objections that did not affect the guideline calculation," and concluded, "*So I am going to deny the remainder of the objections in . . . filing number 90*, recognizing that I can sentence outside the guideline range, recognizing that I have an obligation to consider all the statutory sentencing factors and an obligation to impose a sentence that is sufficient but not greater than necessary to serve all of those statutory objectives." *Id.* at 5-6 (emphasis added).

After denying the DCD 90 objections, the district court began to walk through its calculation of the applicable Guidelines range. At the court's determination to add two points to the base offense level for firearm possession, Durham's counsel interrupted to press her objection that the upward adjustment was inapplicable. The district court resolved that objection in Durham's favor.

The district court then set out its Guidelines calculations, starting with a base offense level of 30 (lower than the Probation Office's selection of 34 because of the court's findings on drug quantities) and decreasing by 3 points for acceptance of responsibility. With a criminal history category of III, which was not contested, the resulting range of imprisonment under the Guidelines was 87 to 108 months. Durham did not press her role-adjustment objection, and the proceedings moved on to allocution. At allocution, Durham argued that in its consideration of the 18 U.S.C. § 3553(a) factors, the district court should consider, among other things, how she attempted to cooperate but was deemed too insignificant a player to be helpful. Sent. Tr. 13-14. Echoing Durham's policy arguments in DCD 90, counsel argued that these facts should be considered to "adjust the sentence appropriately." *Id.* at 14; *see also id.* at 15 (alluding to her alleged inability to qualify for a sentence reduction under Rule 35 of the Federal Rules of Criminal Procedure). Counsel urged the court to impose the mandatory minimum sentence of 60 months' imprisonment. *Id.* at 15.

Before announcing its sentence, the district court discussed the § 3553(a) factors that it was required to consider, including the need to avoid unwarranted sentencing disparities. The court explained that it ruled out the possibility of a mandatory minimum sentence because of Durham's category III criminal history. The court concluded by sentencing Durham to 72 months' imprisonment.[4] Durham's counsel then made several requests, *e.g.*, regarding credit for time served. In closing, the district court asked Durham's counsel if he had "anything further," and he represented, "No, your Honor, that's all." Sent. Tr. 24-25.

## III.

### A.

Durham's primary argument on appeal is that the district court erred by failing to resolve the factual dispute about the applicability of a minor-participant downward adjustment to her offense level. Durham asserts that the district court did not deny her role-adjustment objection and that the failure to rule on this objection at sentencing was a significant procedural error in violation of the directives outlined in *Gall v. United States*, 552 U.S. 38, 51 (2007).

The premise of Durham's argument, however, is mistaken. The district court did rule on Durham's role-adjustment objection. Durham's counsel raised the issue at the sentencing hearing, asking the district court to "recognize Ms. Durham's lesser involvement than of the codefendant" *either* "in the argument that she should get a two-level reduction for being a minor participant" *or* in considering a variance. Immediately after this request, the district court indicated that it would consider the

---

[4]The district court sentenced Franks to 87 months' imprisonment on Count I, and 60 months on a separate count, to be served consecutively. DCD 99.

lesser-involvement argument as part of the § 3553(a) factors, specifically with regard to "the need to avoid unwarranted sentencing disparities." Then, the district court found that the PSI Addendum had addressed many of Durham's DCD 90 objections, indicating its familiarity with both the objections and the Probation Office's responses to those objections, which included the officer's renewed determination that a minor-role downward adjustment to Durham's offense level was not warranted. After addressing certain DCD 90 objections that did *not* affect the Guidelines calculation, the district court then explicitly stated that it was "going to deny the remainder of the objections in . . . filing number 90." By referring to "the remainder of the objections," the district court reinforced the impression that it understood that Durham's role-adjustment objection could affect the Guidelines calculation, and was rejecting that argument. This was the denial that Durham now asserts never happened.[5]

The record suggests that Durham's counsel understood that the district court was denying the argument that a minor-role two-point downward adjustment should be applied, and made a strategic decision to, instead of challenging that denial, ply the contention that Durham played a less substantial role as part of the argument for a variance. Indeed, this was the very choice that Durham's counsel himself proposed

---

[5]The government argues that because Durham did not raise the issue of whether the district court failed to decide the objection, the court was not alerted to the argument and this claim of error was thus not preserved for appeal. *See United States v. McDowell*, 676 F.3d 730, 732 (8th Cir. 2012). Because we think it clear that Durham is mistaken on this point and the court did make a decision on the record, we need not decide whether to review for harmless or plain error. The question of whether the district court would have imposed the same sentence anyway—a question examined in *Molina-Martinez*, 136 S. Ct. at 1342-48, and *United States v. Martinez*, 821 F.3d 984, 988-90 (8th Cir. 2016)—therefore need not be answered in this case. If there is no error, we need not analyze whether the asserted error would have been plain or harmless.

to the district court. Two points reinforce this conclusion. First, when the district court was outlining its calculation of the offense level, counsel interrupted to press (successfully) the objection relating to the firearm-possession adjustment but did not speak up again to assert the role-adjustment objection. The court's calculation of the offense level clearly made no downward adjustment for a mitigating role, yet he did not contest its absence.[6] Second, at allocution, in arguing for a variance, counsel picked up his argument that Durham's role was minor, urging the district court to consider how her relative insignificance prevented her eligibility for a cooperation-related departure or potential Rule 35 sentence reduction. This position tracks Durham's factual contentions in arguing on appeal that the § 3B1.2 adjustment should have been applied. *See* Appellant Br. 8-9; *see also infra* § III.B.

After listening to counsel's arguments at allocution, and having already explicitly denied the DCD 90 objections—which included the role-adjustment objection—the district court indicated that it considered Durham's relative significance or culpability in considering "the need to avoid unwarranted sentencing disparities." Sent. Tr. 19; *see Gall*, 552 U.S. at 50 n.6 (quoting the § 3553(a) factors, including this factor, § 3553(a)(6)). The court's statement of reasons for its sentence also identified this factor as one of its justifications for varying below the Guidelines range, calling out specifically in its written explanation for the sentence "the need to avoid unwarranted sentencing disparities." DCD 112. The district court's consideration of Durham's role-related argument as part of its decision to vary, rather than as a downward adjustment to the offense level, is consistent with how the district court told Durham's counsel that it would address that argument directly after counsel raised it and just before denying the DCD 90 objections. It is also consistent with how counsel raised the issue, asking the court

---

[6]Indeed, counsel represented at the end of the hearing that he had no further arguments, passing up another opportunity to remind the district court to decide the role-adjustment objection if he thought the court had failed to decide it.

to consider Durham's relatively minor role either in calculating the offense level or in varying or departing downward.

Had the district court failed to rule on Durham's role-adjustment objection, that might have constituted a "significant procedural error." *United States v. Parker*, 762 F.3d 801, 805 (8th Cir. 2014) (quoting *Gall*, 552 U.S. at 51). But the district court did not fail to rule on this objection.

To the extent Durham's argument can be characterized as an assertion that the district court did not adequately explain its denial of the objection, we reject that argument too. A district court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (quoting *Gall*, 572 F.3d at 596). In leading up to its denial of the DCD 90 objections, the district court explicitly referenced both DCD 90 and the Probation Office's responses in the PSI Addendum. The PSI Addendum, as noted, set out several reasons in support of its conclusion that "the threshold requirement for a 'minor' or 'minimal participant' reduction is not satisfied." In addition, as indicated in the statement of reasons, the district court adopted the second revised PSI, which included the PSI Addendum and updated information to reflect the court's findings at the sentencing hearing. The court's adoption of and clear references to the Probation Office's reasoning in the PSI Addendum provided adequate explanation for its denial of Durham's objection. *Cf. United States v. Phillips*, 431 F.3d 86, 93-94 (2d. Cir. 2005) (determining that factual findings were sufficient where the district court adopted a PSI and referenced its addendum, which had specifically addressed the defendant's arguments). Further, the district court, after hearing counsel's argument that the court should consider how Durham's relatively minor role prevented her from benefitting from a substantial-assistance departure or Rule 35 reduction, specifically stated in explaining its sentence that it had considered the need to avoid unwarranted sentencing

-11-

disparities. This statement was further illuminated by the district court's earlier explanation, after counsel first raised Durham's role-related argument, that absent reasons related to criminal history, a less culpable person should receive a lower sentence than her more culpable codefendant in order to avoid unwarranted sentencing disparities. Sent. Tr. 5. These explanations were sufficient under the circumstances, given the context and in light of Durham's multi-faceted arguments. *See Rita v. United States*, 551 U.S. 338, 356, 359 (2007) ("The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances.") (finding that an explanation was adequate given "context and the record"). Furthermore, the district court twice noted its consideration of this sentencing factor, § 3553(a)(6), in its statement of reasons.

The district court's consideration of Durham's argument about her relatively minor role in view of the sentencing disparities factor makes sense when seen in the context of the whole record. Durham's arguments in DCD 90 and at sentencing consistently hammered home an overarching theme: she should receive less time, or certainly no more time, than her co-conspirator and codefendant, Franks, for the same count. This was, after all, a conspiracy of two. Durham could only be considered less culpable than (or less significant than, or minor in relation to) the one other person indicted in the conspiracy: Franks. So, she vigorously and successfully contested being held accountable for 19 pounds of methamphetamine mixture when Franks had reached a plea agreement that would hold him accountable for 500 grams to 1.5 kilograms. She protested, again successfully, being held responsible for Franks' firearm possession. She sought a § 3B1.2 downward adjustment. And she sought a variance or departure because supposedly despite her willingness to cooperate, she was too relatively minor a player to be helpful. Given the totality of the arguments and the record in this case, the district court understandably homed in on the heart of the argument: whether, in the spirit of avoiding unwarranted sentencing disparities, Durham's sentence should be lower than her co-conspirator's on the same count. *Cf.*

*Gall*, 552 U.S. at 51-52 ("The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him [or her] than the Commission or the appeals court.") (quoting *Rita*, 551 U.S. at 357-58). We note that Durham did not challenge the substantive reasonableness of her sentence on appeal or argue that she was entitled to a larger variance or that she was dissatisfied with the explanation for the variance.

**B.**

Durham also identified as an issue in this appeal whether the district court erred in calculating her base offense level. As the government noted in its brief, Durham did not flesh out this issue clearly.

A defendant's base offense level is calculated pursuant to Chapter 2 of the Guidelines Manual. USSG Manual § 1B1.1(a)(2) (U.S. Sentencing Comm'n 2014). Next, the district court considers whether the adjustments discussed in Chapter 3 apply. *Id.* § 1B1.1(a)(3).

Although Durham's statement of the issues refers to an error in calculating the base offense level, she identifies no alleged error relating to the Chapter 2 findings.[7] To the extent she intended to argue such a Chapter 2-related error, she has abandoned the issue by not supporting it with any argument. *United States v. Aldridge*, 561 F.3d 759, 765 (8th Cir. 2009).

---

[7]The district court ultimately determined Durham's base offense level to be 30. Under § 2D1.1, if her offense level had been 32 or above, the court's determination on the § 3B1.2 adjustment could have affected her base offense level under § 2D1.1, but the Guidelines do not provide for any effect on the base offense level of 30. USSG Manual § 2D1.1(a)(5).

We understand Durham's issue instead to be that the district court erred in calculating the offense level (but not the base) by failing to apply the requested 2-point reduction under § 3B1.2. The determination whether to apply a § 3B1.2 adjustment "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." USSG Manual § 3B1.2 cmt. 3(C). A "minor participant" adjustment applies to a defendant "who plays a part in committing the offense that makes [her] substantially less culpable than the average participant" (here, Franks) "but whose role could not be described as minimal." *Id.* § 3B1.2 cmts. 3(A) & 5. Durham bore the burden of establishing her entitlement to a minor-role reduction. *See United States v. Salazar-Aleman*, 741 F.3d 878, 880 (8th Cir. 2013). We review for clear error the district court's determination that the minor-role adjustment was inapplicable. *Id.*

As noted above, before denying Durham's DCD 90 objections, the district court referred several times to the PSI Addendum. The PSI Addendum stated that Durham was not a minor participant because she sometimes picked up pound quantities of methamphetamine from the supplier, participated in drug hand-offs to customers, and helped maintain accounts of customer debts; drugs were sold out of the home she shared with Franks; and she knew about the extent of Franks' endeavors. Although Durham took issue with the interpretation of some of these facts, she did not argue that these statements of fact were inaccurate. Significantly, moreover, she offered no evidence in support of her objection. The district court's scheduling order notified Durham of the opportunity to make such submissions or requests and provided a deadline for doing so. Even overlooking the deadline, Durham never—timely or untimely—submitted any written evidence or asked to put on testimony in support of her objection. The district court did not fail to consider evidence in support of a factual finding on the objection; rather, Durham did not submit any. On appeal, Durham argues that the record shows a factual basis for a role reduction: that Durham was denied the opportunity to cooperate because she played

-14-

too minor a role.  Those "facts" mirror the arguments, again without evidentiary support, that Durham's counsel made in asking for a variance.  Considering the entire record, we cannot find clear error in the denial of Durham's objection that a § 3B1.2 reduction should apply.[8]

## IV.

Accordingly, we affirm.

KELLY, Circuit Judge, dissenting.

I respectfully disagree that the district court explicitly ruled on Durham's request for a 2-level reduction in her offense level pursuant to USSG § 3B1.2.  While the district court did "deny the remainder of the objections in . . . filing number

---

[8]Comment 3(B) to § 3B1.2 appears to further support a finding that the minor role was inapplicable.  "If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted . . . ." *Id.* § 3B1.2 cmt. 3(B).  The district court found that Durham should only be accountable for 500 grams to 1.5 kilograms of methamphetamine mixture—not the 19 pounds that the PSI said was actually attributable to the conspirators' crime.  Durham did not contest the accuracy of the amounts of the drugs involved during the period in which she participated, but argued that it would be unfair to hold her accountable for more than what Franks had agreed to.  The court ultimately decreased Durham's base offense level four points below what it would have been if she had been held accountable for the actual amount of drugs involved in the conspiracy during the relevant time.  Despite the potential effect of this change to the applicability of a § 3B1.2 adjustment under comment 3(B), at no point after the district court accepted the lower quantities of drugs attributable to Durham did her counsel alert the court to whether this change affected her objection as previously articulated in DCD 90.

90"—the document in which Durham presented her objections to the presentence report and her request for a departure or variance—the court later revisited one of the very objections listed in filing number 90 and ruled in Durham's favor. I also do not read the district court's rulings on the § 3553(a) factors as a denial of the request for a role reduction. The court discussed factors such as deterrence and Durham's progress on pretrial release, but did not address the participants' relative culpability. *See United States v. Deans*, 590 F.3d 907, 909 (8th Cir. 2010) (noting that a determination of whether a defendant is entitled to a minor role reduction requires the district court to first determine the defendant's relevant conduct and then compare the defendant's actions against those of the other participants in relation to the elements of the offense). In my view, the district court—not the appellate court—should have the opportunity in the first instance to decide whether Durham is entitled to a 2-level reduction in her offense level for her role in the offense. *See Molina-Martinez*, 577 U.S. —, 136 S.Ct. at 1345. I offer no view on whether the reduction should be applied—indeed, this court lists several reasons why the reduction may not be appropriate. But I would leave that decision to the sound discretion of the district court. Accordingly, I respectfully dissent.

_____